MAY TERM, 1921. 429

Central States Canning Co. v. Royal Packing Co.—76 Ind. App. 429.

## CENTRAL STATES CANNING COMPANY v. ROYAL PACKING COMPANY.

[No. 10,613. Filed June 10, 1921. Rehearing denied October 12, 1921.]

SALES.—*Action for Price.—Defects in Quality.—Waiver by Acceptance of Goods.*—Where a contract for the sale of 1,800 No. 10 cans of tomato pulp provided that the specific gravity of the pulp should be not less than 1.04, the specific gravity went to the question of quality and not of quantity, and the buyer, by accepting and using the pulp with full knowledge that the specific gravity thereof was less than that provided for by the contract, waived such defect, in quality and could not defend an action for the purchase price because thereof.

From Tipton Circuit Court; *James M. Purvis,* Judge.

Action by the Central States Canning Company against the Royal Packing Company. From a judgment for plaintiff in an amount claimed to be insufficient, plaintiff appeals. *Reversed.*

*Charles E. Henderson,* for appellant.

*Conrad Wolf, Earl B. Barnes* and *C. W. Roll,* for appellee.

McMAHAN, J.—Complaint by appellant to recover the value of a carload of tomato pulp sold to appellee under a written contract, which was made a part of the complaint. By this contract dated August 31, 1916, appellant agreed to sell 18,000 No. 10 cans of pulp at $1.70 per dozen, the specific gravity of which was not to be less than 1.04, appellee to have the privilege of purchasing the entire output of appellant for the season of 1916 at the same price, shipments to be made in October, November and December of that year. The complaint alleges that pursuant to said contract appellant furnished and delivered to appellee pulp as follows: On September 9, 1916, 8,740 cans; October 4, 1916, 5,000 cans, and October 11, 1916, 6,500 cans. That when said

430    APPELLATE COURT OF INDIANA,

Central States Canning Co. *v.* Royal Packing Co.—76 Ind. App. 429.

contract was entered into the pulp was not in existence but was to be thereafter manufactured; that prior to the date of the last shipment appellee had accepted and paid for the prior shipments in full, but had failed and neglected to pay for the last shipment amounting to $920.84, and demanding judgment.

Appellee filed answer in two paragraphs: (1) General denial; (2) admitting the execution of the contract and alleging that the quantity of pulp is determined by its specific gravity; that instead of delivering pulp of the specific gravity of 1.04 as required by the contract, the pulp delivered by appellant had a specific gravity of but 1.03; that the 20,240 cans delivered was only equal to 15,000 cans with a specific gravity of 1.04 and that appellee had tendered and offered to pay appellant $2,170.28 upon said contract which is alleged to be more than is due on said contract and asking to be discharged.

Appellee also filed a counterclaim seeking damages for the alleged failure of appellant to sell and deliver all of its pack for the season, but inasmuch as it does not appear that there was any judgment or finding rendered upon the counterclaim, we need not enter into a discussion of the issue presented thereby. There was a trial by the court and a judgment rendered in favor of appellant for $150.17.

Appellant filed a motion to modify the judgment, but since the judgment follows the finding we need give no consideration to the action of the court in overruling this motion.

Appellant's motion for a new trial specifying that the decision is not supported by sufficient evidence, is contrary to law and that the amount of recovery is too small, being overruled, this appeal is prosecuted.

The contract calls for the sale of 18,000 cans of pulp with a specific gravity of not less than 1.04 with the

privilege of appellee to take all the output of appellant's plant for the season. On September 9, appellant shipped appellee 8,740 cans amounting to $1,238.17, which was accepted and paid for in full within ten days after the same was delivered to appellee, 6,000 cans were shipped and delivered October 4, which at $1.70 per dozen amounted to $708.34 and which was also accepted and paid for in full prior to the shipment of 6,000 cans October 11, which last shipment at $1.70 per dozen amounted to $920.84. Upon receipt of each of said first two shipments and before paying for them, appellee tested the pulp so shipped and learned that it had a specific gravity of but 1.03, and with this knowledge paid for them in full at the rate of $1.70 per dozen cans. Appellant by its complaint seeks to recover the contract price for the last shipment

The question presented may be briefly stated as follows: Where a person by a written contract agrees to sell at a fixed price a certain number of cans of pulp of a certain specific gravity, thereafter to be manufactured, and the full number of cans are manufactured and shipped to the vendee, and which are tested, accepted and used by the vendee without objection, and vendee before the third and last car is shipped fully pays for the first two cars, and after accepting and using the third car offers to pay for the third car by docking all three cars, on the ground that the specific gravity of the pulp was less than that called for in the contract,—Does the acceptance and use of the pulp, with full knowledge on the part of the vendee that the specific gravity is less than that called for by the contract, preclude the vendee from recovering for such defect or defeat an action brought by vendor for the purchase price?

It is the appellant's contention that, where goods are contracted for and at the time are not in being, but are

to be manufactured and delivered at a subsequent date, the contract is an executory one, and if the goods are delivered and upon delivery the buyer tests them and accepts them without complaint, such acceptance waives any defects in quantity, quality, nature or character of the goods so delivered, and that thereafter the buyer cannot defeat an action for the purchase price or set up by counterclaim or cross-complaint any affirmative claim for damages for breach of contract.

In *Reed* v. *Randall* (1864), 29 N. Y. 358, 86 Am. Dec. 305, the court says: "In cases of executory contracts for the sale and delivery of personal property, the remedy of the vendee to recover damages, on the ground that the article furnished does not correspond with the contract, does not survive the acceptance of the property by the vendee after opportunity to ascertain the defect, unless notice has been given to the vendor, or the vendee offers to return the property. The retention of the property by the vendee is an assent, on his part, that the contract has been performed. The delivery of property corresponding with the contract is a condition precedent to the vesting of the title in the vendee. The parties understand that the vendee is not bound to accept the property tendered, except upon this condition. This the vendee is to determine upon the receipt of the property. There is no intention that a defective article should be accepted, and that the vendee should rely upon the covenant for his indemnity. The latter is not bound to receive and pay for a thing that he has not agreed to purchase; but if the thing purchased is found on examination to be unsound, or not to answer the order given for it, he must immediately return it to the vendor, or give him notice to take it back, and thereby rescind the contract, or he will be presumed to have acquiesced in its quality. He cannot accept the delivery of the property under the con-

tract, retain it after an opportunity of ascertaining its quality, and recover damages, if it be not of the quality or description called for by such contract." To the same effect see, *American, etc., Co.* v. *Seigel, etc., Co.* (1906), 221 Ill. 145, 77 N. E. 588, 4 L. R. A. (N. S.) 1167; *Neff* v. *McNeeley* (1901), 1 Neb. (Unof.) 416, 96 N. W. 150; *Munford* v. *Kevil* (1900), 109 Ky. 246, 58 S. W. 703; 23 R. C. L. 1440.

"In some jurisdictions under an executory contract for the sale of goods, where there is no fraud nor warranty, the right of the vendee to claim damages, set up as a defense to an action for the purchase-price, or by way of counterclaim, does not survive a delivery of the goods by the seller and an acceptance by the purchaser. The retention of the property by the purchaser without objections is an admission on his part that the contract has been performed. Of course he is not bound to receive or pay for an article he has not purchased, but he is bound to ascertain, when it is delivered to him, whether or not it is what he wants, or whether it conforms to the contract; and, if it does not, he must either return it to the vendor, or give him notice to take it back, or he will be presumed to have acquiesced in its quality." 3 Elliott, Contracts §2110.

Appellee admits the law to be as contended by appellant but insists that it should not apply under the circumstances presented in this case, and says it does not feel that it should be compelled to pay $1.70 per dozen cans for 5,060 gallons of water, which it says is in effect what appellant insists appellee should do for the reason that the difference between 20,240 gallons of pulp with a specific gravity of 1.03 and 15,180 gallons of pulp with a specific gravity of 1.04 is 5,060 gallons of water. There are 5,060 gallons more water in the first than there is in the latter and this is the only difference be-

tween them.   Appellee contends that the specific grav-
ity mentioned in the contract was for the purpose of
determining the quantity and the amount of tomato sub-
stance contained in each can and not for the purpose
of determining the quality; that where a food product
canned in solution is the subject of contract, and the
amount or quantity of food substance is determined by
the specific gravity thereof, the specific gravity stated
governs the quantity and not the quality.

The only question for our determination is whether
the specific gravity of 1.04 named in the contract goes
to the question of quantity or to the question of quality.
Appellee argues that it goes to the question of quantity;
that since the food substance contained in 20,240 cans
with a specific gravity of 1.03 is equal to only 15,180
cans with a specific gravity of 1.04, that it is being
called upon to pay for 5,060 gallons of water; that it is
the same as if the cans had been only three-fourths full
of pulp with a specific gravity of 1.04 instead of being
full of pulp with a specific gravity of 1.03.

The position of appellee is that the specific gravity
describes the amount of pulp to be shipped and not its
kind or quality.   We cannot concur in this contention.
The parties have themselves, and we think correctly,
placed a different construction upon the question.   The
contract required the pulp to be in new No. 10 tin cans,
and following the word "quantity" they inserted the
number of cans, 18,000, and after the word "quality"
along with the attributes describing the quality is the
specific gravity.   The amount or quantity of pulp to be
furnished was to be measured by the number of cans.
The quality was in part to be determined by the spe-
cific gravity.   Appellee having accepted and used the
pulp with full knowledge that the specific gravity was
less than that called for by the terms of the contract
waived such defect in quality and when sued for the

purchase price cannot defend on the ground that the specific gravity was less than that called for in the contract.

Judgment is reversed with direction to sustain appellant's motion for a new trial and for further proceedings consistent with this opinion.